UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JENNIFER M. B., an Individual,

Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security,

Defendant.

Case No.: 8:19-00153 ADS

MEMORANDUM OPINION AND ORDER OF REMAND

## I. INTRODUCTION

Plaintiff Jennifer M. B[1] ("Plaintiff") challenges Defendant Andrew M. Saul[2], Commissioner of Social Security's (hereinafter "Commissioner" or "Defendant") denial of her application for a period of disability and disability insurance benefits ("DIB").

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] The complaint, and thus the docket, do not name the Commissioner of Social Security. On June 17, 2019, Saul became the Commissioner. Thus, he is automatically substituted as the defendant under Federal Rule of Civil Procedure 25(d).

For the reasons stated below, the decision of the Commissioner is REVERSED and REMANDED.

## II. FACTS RELEVANT TO THE APPEAL

A review of the entire record reflects certain uncontested facts relevant to this appeal. Prior to filing her application for social security benefits, Plaintiff last worked in 2014 performing inventory control for 3M. (Administrative Record "AR" 214, 221-26).[3] Her previous work experience also included waitressing, residential caregiving, serving as a prison social worker, and a brief attempt to work for Lyft. (AR 68-69, 214, 221-26). At the administrative hearing, Plaintiff testified that she held several positions at 3M that all required manual labor, and she was eventually promoted to inventory. (AR 46-52). That job was the least demanding, but it still required her to pull heavy items off of a fork truck, and move them to areas where she could count inventory. (AR 52). She also had to roll powder barrels, weighing up to 500 pounds, from one area to another. (AR 52). She counted buckets, weighing 70 pounds or more, which she had to lift herself and move between shelves. (AR 52). Finally, she had to pull boxes out of "big bins," inventory, and return them to the bins. (AR 52). Sometimes she was required to stand at the computer in the docks and do computer work, although she was never fully trained for that because she had to leave for her back surgeries. (AR 52-53).

Plaintiff contends that she has been unable to work since 2015 due to her collapsing spine, pain, and other issues associated with her degenerative back. (AR 46, 54, 67, 69). After her two back surgeries, 3M tried to accommodate her condition by

[3] Plaintiff's certified earnings record indicates additional income from 3M in 2015 and 2016, but Plaintiff explained it was disability pay from that company. (AR 27-28 45, 74, 198, 200).

changing her chair and work environment, and she tried changing her lifestyle, but she still had problems and the doctors recommended yet another surgery. (AR 46).

Plaintiff states that she has been struggling with her back for a long time and it upsets her to talk about it. (AR 54, 66, 91). Her parents had histories with back problems, but she didn't experience her issues until she was 40. (AR 54-55). It started as a burning sensation in her foot, which lasted about a year. (AR 55). She saw various foot doctors until they discovered she had an enlarged vertebra from arthritis throughout her body. (AR 55). The enlarged vertebra ruptured a disc, and this caused nerve problems which made her foot feel like it was "on fire." (AR 55).

Plaintiff had her first surgery in 2010, a laminotomy at L4-5. (AR 55). Immediately after surgery, her foot stopped hurting, and she thought everything was going to get better. (AR 55). She went back to light duty at work, but, by the end of that first year, she stated she could no longer walk across a room. (AR 55).

That led to a spinal fusion in April 2017. (AR 55, 72). She had to fight with the insurance companies to get the surgery approved. (AR 73). At one point, it was approved, but then they denied it and told her to try physical therapy for three months, have more MRIs and other tests done, and even take part in psychological therapy. (AR 72-73). Plaintiff contends that the insurance company strung her out for a year, causing stress and anxiety. (AR 73). After it was finally approved and she had the second surgery, her doctor told her not to go back to work. (AR 55-56). However, Plaintiff states that she again returned to light duty because her employer wasn't going to pay her if she didn't. (AR 55-56).

Plaintiff testified she tried to ignore her issues and hoped to get better, but she can't recall a day in her 40s of not having back pain.[4] (AR 56-57, 70). Finally, her pain became so bad she could no longer ignore it. (AR 56). Her surgeon said she would need yet another fusion, this time at L2-3. (AR 56). He explained to her that the pain would never get better, and her condition would continue to degenerate, but the fusion could fix just that place in her back. (AR 56). In the last nine years, she may have had only a two-month period where she wasn't either needing back surgery, waiting for back surgery, or healing from back surgery, and she "do[es]n't want to live like that anymore." (AR 57).

Since her April 2017 surgery, Plaintiff states that she still has daily pain, but the severity of the bad days and daily pain is less. (AR 60, 72). Last month, however, she had more bad days than good; about two weeks out of the month were "bad" as a result of new sciatic problems that didn't exist before surgery. (AR 60). If she "really bab[ies] herself," she might only have one or two bad weeks. (AR 60). She stated was going to physical therapy for her new problems, but she stopped when her insurance stopped covering therapy. (AR 60, 63).

In lieu of another surgery and with her doctor's approval she's been doing Pilates and exercises to strengthen her core. (AR 57). When she's not having nerve problems and her sciatica isn't bothering her, she does her workout, which includes 40 minutes of stretches and crunches that "emulate" what she was doing in physical therapy. (AR 57, 59). Currently, her doctor is waiting for her bones to solidify around the most recent hardware so he can refer her to a pain-management specialist. (AR 57-59).

[4] Plaintiff turned 49 the day after she testified at the hearing. (AR 39, 57, 184).

To reduce pain, Plaintiff spends a lot of time lying horizontal or draped over an exercise ball. (AR 60, 73, 90). She does the latter for about 20 minutes at a time, and it relieves some of the pressure where she has the most pain. (AR 60-61). She also performs “Child’s Pose”[5] frequently, and she uses heat pads and ice packs. (AR 61).

Plaintiff spends most of her time at home. (AR 58). She cannot sit in normal chairs because they lead to pain, so she has different spots set up with pillows for comfort. (AR 58, 62). She cooks for her teenage son and drives him to school and activities, and she can grocery shop but needs the groceries bagged lightly. (AR 58-60, 65-66). She can drive for about an hour, but she needs a brace to do that, and for sitting long intervals and emergencies. Plaintiff contends the brace rubs and causes soreness in other areas on her body. (AR 57, 61-62). She goes to dinner sometimes, but even that can cause back pain for the days following. (AR 65). Her son does the bulk of anything that requires lifting, such as taking out the garbage or doing laundry. (AR 58).

Recently, Plaintiff volunteered at the concession table for her son’s wrestling meet. (AR 63, 65). She stood for two hours until she experienced a sharp pain, and the whole next day was “pretty sad.” (AR 63).

Walking has always been her “therapy.” (AR 64). She used to walk three- to three-and-a-half miles. (AR 64). Now, due to her back, she becomes sore suddenly and needs to return home. (AR 64). She still walks, when she is up for it, but she stays near home. (AR 64).

---

[5] The Child’s Pose is a stretch that helps the back and muscles around the hips. See https://www.mayoclinic.org/healthy-lifestyle/stress-management/multimedia/childs-pose/vid-20453580 (last visited June 5, 2020).

Plaintiff takes a muscle relaxer and pain medication, but only in emergencies because of the side effects. (AR 64-65). When she takes her pain medications, and then stops, she experiences headaches. (AR 64). Sometimes taking her muscle relaxer and then alternating hot and cold packs for a few hours will "really kind of take the edge off." (AR 65).

Plaintiff states can sit for about an hour and a half before her back becomes painful. (AR 69). If she sits for too long, she can't do normal things, like get on the toilet. (AR 69). When she hurts herself, it can affect her for days. (AR 70). Everything creaks, and she moves slowly. (AR 70). She can stand for only a few minutes before she must stretch, try to bend, and do other things—like pull her knee to her chest—to alleviate her pain. (AR 70.) When she sleeps, her back always hurts. (AR 70-71). She states that she hasn't had normal REM sleep in years. (AR 71). This causes fatigue, and she alternates between exhaustion and manic alertness during the day. (AR 71). Her pain fluctuates from a level three to ten. (AR 70).

Plaintiff tried to work for Lyft in September and October to help pay for her medical bills, but she was unable to do it for enough hours to compensate for the vehicle Lyft rented for her. (AR 68). Working for Lyft caused sciatic pain in her back and down her leg, and soreness that crept up her back. (AR 68). She also experienced sharp pains and tenderness that made her tear up. (AR 69).

Plaintiff does not feel as if she has healed. (AR 63). She states that she has lost over thirty percent of her flexibility. (AR 63). Her legs and buttocks have not recovered from the last surgery. (AR 63, 74). She's had to adapt her whole life around slowing the degeneration in her back. (AR 63). Her surgeon also does not believe she's healed, and he has advised her not lift anything over 10 pounds, bend, reach, or sit for extended

periods of time. (AR 58-59, 63, 74). Her surgeon's physician assistant does not think Plaintiff "belong[s] in the work force." (AR 74). Plaintiff believes any work activity would further hurt or injure her. (AR 67). She can't imagine doing anything six hours a day, let alone eight. (AR 67, 90).

## III. PROCEEDINGS BELOW

### A. Procedural History

Plaintiff protectively filed her claim for Title II social security benefits on November 2, 2015, alleging disability beginning August 15, 2015. (AR 25, 184-85). Plaintiff's DIB application was denied initially on March 7, 2016 (AR 103), and upon reconsideration on June 3, 2016 (AR 116). A hearing was held before ALJ Susanne M. Cichanowicz on February 6, 2018. (AR 41-92). Plaintiff, represented by counsel, appeared and testified at the hearing, as well as vocational expert Joseph Torres. (AR 41-92).

On March 20, 2018, the ALJ found Plaintiff was "not disabled" within the meaning of the Social Security Act.[6] (AR 25-34). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on December 10, 2018. (AR 1-6). Plaintiff then filed this action in District Court on January 25, 2019, challenging the ALJ's decision. [Docket ("Dkt.") No. 1].

The case is ready for decision.[7]

---

[6] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

[7] The parties filed consents to proceed before the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), including for entry of final Judgment. [Dkt. Nos. 7, 10].

**B. Summary of ALJ Decision After Hearing**

In the ALJ's March 20, 2018 decision (AR 25-34), the ALJ followed the required five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act.[8] 20 C.F.R. § 404.1520(a)(4). At **step one**, the ALJ acknowledged that Plaintiff's 3M earnings after the August 15, 2015 alleged onset date were for disability payments rather than work activity, as Plaintiff testified, and found that Plaintiff's work for Lyft was not sufficient to rise to substantial gainful activity. (AR 27-28). Accordingly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Id.) At **step two**, the ALJ found that Plaintiff had the following severe impairment: lumbar degenerative disc disease, status/post laminotomy and two fusions. (AR 28). At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525[,] and 404.1526)." (AR 28).

---

[8] The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled: Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two. Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate. Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four. Step four: Is the claimant capable of performing her past work? If so, the claimant is not disabled. If not, proceed to step five. Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled. Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (citing 20 C.F.R. § 404.1520); see also Ford v. Saul, 950 F.3d 1141, 1148-49 (9th 2020).

The ALJ then found that Plaintiff had the Residual Functional Capacity ("RFC")[9] to perform sedentary work as work as defined in 20 C.F.R. § 404.1567(a)[10] with the following additional limitations:

> [Plaintiff] can occasionally balance, stoop, and climb ramps or stairs; she cannot kneel, crouch, crawl, or climb ladders, ropes or scaffolds; and she must be allowed to alternate between sitting and standing at will, while remaining on task.

(AR 28-32).

At **step four**, based on Plaintiff's vocational background, testimony, earnings record, and the vocational expert's testimony, the ALJ found that Plaintiff was unable to perform her past relevant work as an industrial cleaner, production machine attendant, packer, or stock control clerk. (AR 32).

At **step five**, the ALJ found that, "[c]onsidering [Plaintiff]'s age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [she] can perform." (AR 33). The ALJ accepted the vocational expert's testimony that Plaintiff would be able to perform the representative occupations of: lens installer (Dictionary of Occupational Titles ("DOT") 713.687-026); assembler (DOT

---

[9] An RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

[10] "Sedentary work" is defined as

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a); see also Casey H. v. Berryhill, 2018 WL 5629303, at *3 n.3 (C.D. Cal. Oct. 29, 2018).

739.687-066); and table worker (DOT 739.687-182). (AR 33-34). As such, the ALJ found that Plaintiff was "not disabled," as defined in the Social Security Act, from August 15, 2015, through the date of the ALJ's decision. (AR 34).

## IV. ANALYSIS

### A. Issues on Appeal

Plaintiff raises three issues for review: (1) whether the ALJ properly considered her subjective allegations regarding her pain and limitations; (2) whether the ALJ properly considered the State Agency opinions; and (3) whether new and material evidence supports remand. [Dkt. No. 16 (Joint Stipulation), p. 2]. For the reasons below, the Court agrees with Plaintiff regarding the ALJ's failure to properly consider her subjective testimony, and remands on that ground.

### B. Standard of Review

A United States District Court may review the Commissioner's decision to deny benefits pursuant to 42 U.S.C. § 405(g). The District Court is not a trier of the facts but is confined to ascertaining by the record before it if the Commissioner's decision is based upon substantial evidence. Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (District Court's review is limited to only grounds relied upon by ALJ) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)). A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied. Mayes v. Massanari, 276 F.3d 453, 458-59 (9th Cir. 2001).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and

internal quotation marks omitted).  "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld."  Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (citing Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ.").  However, the Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [s]he did not rely."  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citation omitted).

### C. The ALJ Failed to Properly Consider Plaintiff's Subjective Complaints

Plaintiff asserts that the ALJ improperly evaluated her subjective testimony regarding her pain and limitations.  Defendant contends that the ALJ appropriately found Plaintiff's testimony not fully supported by the record, and Plaintiff's disagreement with the ALJ is not evidence of error.

#### 1. Legal Standard for Evaluating Claimant's Testimony

A claimant carries the burden of producing objective medical evidence of his or her impairments and showing that the impairments could reasonably be expected to produce some degree of the alleged symptoms.  Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).  Once the claimant meets that burden, medical findings are not required to support the alleged severity of pain.  Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) ("claimant need not present clinical or diagnostic evidence to support the severity of [her] pain") (citation omitted)).

Once a claimant has met the burden of producing objective medical evidence, an ALJ can reject the claimant's subjective complaint "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton, 331 F.3d at 1040; Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir. 2015) ("we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination"); Laborin v. Berryhill, 867 F.3d 1151, 1155 (9th Cir. 2017).

The ALJ may consider at least the following factors when weighing the claimant's credibility: (1) his or her reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his or her conduct; (3) his or her daily activities; (4) his or her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (citing Light, 119 F.3d at 792). "If the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Id. at 959 (citing Morgan v. Apfel, 169 F.3d 595, 600 (9th Cir. 1999)).

2. The ALJ Failed to Provide Clear and Convincing Reasons Supported by Substantial Evidence

Having carefully reviewed the record, the Court finds that the ALJ failed to articulate specific clear and convincing reasons for discounting Plaintiff's testimony.[11] The ALJ found Plaintiff's various statements of record about her impairments, activities,

[11] The ALJ did not make a finding of malingering in her opinion. Thus, in discounting Plaintiff's subjective complaints, the ALJ was required to articulate specific, clear and convincing reasons. See Benton, 331 F.3d at 1040; Brown-Hunter, 806 F.3d at 489.

and the intensity, persistence, and limiting effects of her symptoms "generally consistent" with her testimony. (AR 29). The ALJ also found her medically determinable impairments could reasonably be expected to cause her alleged symptoms. (Id.). However, the ALJ nonetheless discounted Plaintiff's subjective complaints based on her reporting less-severe pain after surgery, her daily activities, and because her testimony was not consistent with the objective medical evidence. (AR 29-32).

First, the ALJ improperly faulted Plaintiff regarding her hearing testimony about her condition after surgery. (AR 30). The ALJ specifically noted Plaintiff's testimony that her pain was less severe and she had fewer "bad days" than prior to surgery. (AR 30). While the ALJ could consider medical improvement, here, it's an insufficient reason to discount the testimony. Plaintiff's candid acknowledgment of slight post-surgical improvement, (AR 60, 72), is not necessarily inconsistent with her testimony that she still experiences disabling pain and related symptoms even after the procedure (AR 60, 72 (explaining that her pain before surgery wasn't "that different" from her pain now). See, e.g., Hernandez v. Astrue, 2009 WL 56760, at *7 (C.D. Cal. Jan. 6, 2009) (claimant's acknowledgment that symptoms improved with treatment are not necessarily inconsistent with allegations of a disabling impairment). Moreover, she estimated about half the month was still "bad" as a result of new sciatic problems that arose after surgery, and she testified her doctor said her back will continue to degenerate and the pain will never go away. (See AR 56, 58-59, 63, 74). There is nothing inherently inconsistent about that testimony, at least such that it meets the clear and convincing standard. See Benton, 331 F.3d at 1040; Neyman-Reese v. Berryhill, 2018 WL 1336048, at *8 (D. Or. Mar. 13, 2018) (even though claimant testified her condition improved, and the record unequivocally reflected improvement,

symptom abatement was not a clear and convincing reason to discount subjective complaints because claimant continued to experience symptoms of her "lifelong condition"); Hernandez, 2009 WL 56760 at *7 (even though record supported ALJ's finding that condition improved with medication and therapy, ALJ improperly rejected claimant's credibility because claimant explained the improvement was only partial and he still suffered significant symptoms).

Second, the ALJ pointed to Plaintiff's testimony that she walked regularly and, on "most days," she completed 40 minutes of physical therapy-type exercise, and then listed a number of other activities, including cooking, driving her son to school and activities, going to dinner "sometimes," and shopping for groceries. (AR 30). The ALJ found that "her described activities do not support the severity of her alleged pain and functional restrictions." (AR 30). This is insufficient for several reasons. Plaintiff's testimony that she followed treatment recommendations and attempted to get better by walking and exercising, (see AR 57 (Plaintiff's explanation that she partakes in her previously "approved" physical-therapy exercises with her doctor's "blessing"), 59 ("I follow all of my doctor's instructions."), 375 (treating physician's letter to insurance company indicating Plaintiff "has been doing a daily home exercise program"), is a reason to credit Plaintiff, not a convincing reason to doubt her complaints.[12] Cf. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) ("the ALJ may consider . . . unexplained or inadequately explained failure . . . to follow a prescribed course of treatment"); see 20 C.F.R. § 404.1530 (claimants must "follow treatment prescribed by [their] medical source(s) if this treatment is expected to restore [their] ability to work"); Garcia v.

---

[12] Notably, and inconsistently, the ALJ later found that Plaintiff's "expressed desire to avoid another surgery is certainly reasonable . . . ." (AR 31).

Berryhill, 2017 WL 942903, at *5 (W.D. Wash. Mar. 10, 2017) (claimant's testimony that she walked twice a week and stretched daily is evidence she followed treatment recommendations, not a valid reason supported by substantial evidence for discounting her statements).

More importantly, while the ALJ listed other activities in addition to walking and exercising, such as driving, cooking, eating, and grocery shopping, the Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison, 759 F.3d at 1016; Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her [testimony] as to her overall disability."). "[O]nly if [the] level of activity [was] inconsistent with [a claimant's] claimed limitations would . . . activities have any bearing on . . . [subjective testimony]." Garrison, 759 F.3d at 1016. Moreover, the ALJ failed to make requisite findings as to the application of any of Plaintiff's activities to the work setting. See Martinez v. Berryhill, 721 F. App'x 597, 600 (9th Cir. 2017) (ALJ improperly discounted testimony "based on [claimant's] daily activities . . . [without] support[ing] the conclusions as to the frequency of those activities or their transferability to the workplace."); Orn, 495 F.3d at 630 (ALJ must make "specific findings related to [the daily] activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility

determination"). Accordingly, the second reason for discounting Plaintiff's testimony is not clear or convincing.

The remaining reason provided by the ALJ is also insufficient. On at least three occasions, the ALJ referenced the same justification for doubting Plaintiff's complaints: the lack of support in the objective medical evidence of record. See AR 30 (finding Plaintiff's statements were "not entirely consistent with the medical evidence"), 30 (the "objective evidence in the record and [Plaintiff's] surgical history demonstrate that [she] has back related functional limitations, but they do not fully support her allegations"); 34 ("relevant evidence in the record . . . does not generally support [Plaintiff]'s statements"). However, because the ALJ did not provide any other clear and convincing reason for discounting the subjective complaints, reliance on a conflict with objective evidence alone is not a sufficient basis to support the credibility determination. See Burch, 400 F.3d at 681 (lack of objective medical evidence to support subjective symptom allegations cannot form the sole basis for discounting pain testimony); Dschaak v. Astrue, 2011 WL 4498835, at *1 (D. Or. Sept. 27, 2011) ("[O]nce the[] other bases for the ALJ's decision were discarded as erroneous, the ALJ's credibility determination could not rely solely on conflicts with the medical evidence."). The ALJ's summary of the medical evidence is not sufficient to support the finding. See Brown-Hunter, 806 F.3d at 494 (credibility determination insufficient when ALJ "simply state[s] her non-credibility conclusion and then summarize[s] the medical evidence").

The Court thus concludes the ALJ committed error in discounting Plaintiff's testimony without a clear and convincing explanation supported by substantial evidence. In this instance, the Court cannot conclude that the ALJ's error was harmless. See, e.g., Id. at 492-93 (ALJ's failure adequately to specify reasons for discrediting

claimant testimony "will usually not be harmless"). In light of the significant functional limitations reflected in Plaintiff's subjective statements, the Court cannot "confidently conclude that no reasonable ALJ, when fully crediting the [Plaintiff's] testimony, could have reached a different disability determination." Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055-56 (9th Cir. 2006).

**D. The Court Declines to Address Plaintiff's Remaining Arguments**

Having found that remand is warranted, the Court declines to address Plaintiff's remaining arguments. See Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); see also Alderman v. Colvin, 2015 WL 12661933, at *8 (E.D. Wash. Jan. 14, 2015) (remanding in light of interrelated nature of ALJ's decision to discount claimant's credibility and give appropriate consideration to physician's opinions, step-two findings, and step-five analysis); Augustine ex rel. Ramirez v. Astrue, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand."). Because it is unclear, in light of these issues, whether Plaintiff is in fact disabled, remand here is on an "open record." See Brown-Hunter, 806 F.3d at 495; Bunnell, 336 F.3d at 1115-16. The parties may freely take up all issues raised in the Joint Stipulation, and any other issues relevant to resolving Plaintiff's claim of disability, before the ALJ.

**E. Remand For Further Administrative Proceedings**

Remand for further administrative proceedings, rather than an award of benefits, is warranted here because further administrative review could remedy the ALJ's errors. See Brown-Hunter, 806 F.3d at 495 (remanding for an award of benefits is appropriate

in rare circumstances).  The Court finds that the ALJ failed to properly evaluate Plaintiff's subjective complaints.  On remand, the ALJ shall properly review and evaluate Plaintiff's pain testimony and reassess Plaintiff's RFC.  The ALJ shall then proceed through steps four and five, if necessary, to determine what work, if any, Plaintiff is capable of performing.

## V.   ORDER

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter for further proceedings consistent with this Order.  Judgement shall be entered accordingly.

DATE: September 23, 2020

                                    /s/ Autumn D. Spaeth  
                                    THE HONORABLE AUTUMN D. SPAETH  
                                    United States Magistrate Judge